UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WESTERN COMMUNICATION CORP.,

 Plaintiff,        Case No. 18-cv-10437
              Hon. Matthew F. Leitman
v.

ED BARNICK,

 Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S ALTERNATIVE REQUEST TO STRIKE IMPERTINENT, IMMATERIAL, AND SCANDALOUS MATTERS FROM PLAINTIFF'S COMPLAINT (ECF #8)

In this action, Plaintiff Western Communication Corp. ("Western") alleges that Defendant Ed Barnick tortiously interfered with business relationships Western had with two customers. (*See* Am. Compl., ECF #4.)  Barnick has filed a motion to dismiss Western's Amended Complaint for failure to state a claim. (*See* Mot. to Dismiss, ECF #8.)  In the alternative, Barnick asks the Court to strike certain purportedly impertinent and immaterial allegations from the Amended Complaint. (*See id.*)

For the reasons stated below, the Court **DENIES** the motion to the extent it seeks dismissal for failure to state a claim and **GRANTS IN PART AND DENIES IN PART** the motion to the extent it seeks to strike allegations from the Amended Complaint.

# I[1]

## A

Western is a marketing and advertising agency. (*See* Am. Compl. at ¶5, ECF #4 at Pg. ID 20.) In 2016, Western had contracts and long-standing, multi-year business relationships with two companies: Physician's Technology, LLC ("PT") and Nature's Health Connection, Inc. ("NHC"). (*See id.*) As a result of Western's good work on their behalf, PT and NHC experienced dramatic sales growth. (*See id.* at ¶¶ 13, 15, Pg. ID 23.)

Ed Barnick works in logistics and distribution. (*See id.* at ¶7, Pg. ID 22.) Barnick worked on various projects with Western for a number of years. (*See id.* at ¶8, Pg. ID 22.)

At various times, Barnick told Western CEO Mark Young that he needed to find additional work. (*See id.* at ¶10, Pg. ID 22.) In an effort to help Barnick, Young introduced Barnick to executives at PT and NHC. (*See id.* at ¶16, Pg. ID 23-24.) Young believed that Barnick could assist PT and NHC with logistics and distribution, and he recommended that PT and NHC hire Barnick for specific, short term projects. (*See id.*) Based on Young's recommendation, PT and NHC hired Barnick as an independent contractor for some limited projects. (*See id.* at ¶17, Pg. ID 24.)

---

[1] The information in this section is drawn from the factual allegations in the Amended Complaint. As it must, the Court treats those allegations as true for purposes of this motion.

**B**

Barnick wanted to expand his role at both PT and NHC, and he hoped to become an employee of NHC. (*See id.* at ¶21, Pg. ID 24.) To achieve that objective, he sought to ingratiate himself with both companies by, among other things, identifying the causes of certain problems and challenges they were facing. (*See id.* at ¶¶ 21-22, Pg. ID 24.) As relevant here, Barnick sought to curry favor with PT and NHC by falsely telling them that Western's quality of work was poor, that Young sought to take over both companies, and that Western was overbilling PT and NHC. (*See id.* at ¶¶ 23-27, 32, Pg. ID 25-27.) Finally, Barnick offered to help both companies obtain a better advertising agency that, he claimed, would save them money. (*See id.* at ¶¶ 23, 30, 33, 35, Pg. ID 25-27.)

Based on Barnick's conduct, PT and NHC terminated their respective relationships with Western. (*See id.* at ¶¶ 23, 31, 33, Pg. ID 25-27.) Barnick then steered NHC and PT to another advertising agency with which he had a relationship. (*See id.* at ¶35, Pg. ID 27.) Western thereafter filed suit against PT and NHC in separate actions in Michigan state court for money due under their respective contracts. (*See id.* at ¶¶ 36-37, Pg. ID 27-28.) Barnick assisted PT and NHC with obtaining counsel to defend against Western's claims and to file counterclaims against Western. (*See id.*)

**C**

Western subsequently filed this action against Barnick for tortiously interfering with its business relationships with PT and NHC. (*See* Am. Compl., ECF #4.) On March

12, 2018, Barnick filed a motion to dismiss Western's Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Mot. to Dismiss, ECF #8.) Barnick alternatively requests that the Court strike impertinent and immaterial allegations in the Amended Complaint under Rule 12(c) of the Federal Rules of Civil Procedure. (*See* Mot. to Dismiss, ECF #8.)

## II

## A

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint when a plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *See id.* (citing *Twombly*, 550 U.S. at 556). When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must therefore provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action"

to survive a motion to dismiss. *Twombly*, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**B**

Barnick first contends that Western has failed to plead that he acted solely for his own interest.[2] The Court disagrees. Western alleges that (1) Barnick "ingratiated himself to [the leadership of both companies], hoping to expand a role for himself within their organization, and with NHC in the hopes of becoming an employee" (Am. Compl. at ¶21, ECF #4 at Pg. ID 24); (2) that "in furtherance of that objective" he "sought out hidden 'evil doers' within each company," and falsely "point[ed] the finger at Western" for the companies' business problems (*id.* at ¶¶ 22-23, Pg. ID 24-25); and (3) that he ultimately "steered" both companies to an advertising agency "with whom [

---

[2] Under Michigan law, "[t]he elements of tortious interference with a business relationship are [1] the existence of a valid business relationship or expectancy, [2] knowledge of the relationship or expectancy on the part of the defendant, [3] an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and [4] resultant damage to the plaintiff." *Mino v. Clio Sch. Dist.*, 661 N.W.2d 586, 597 (Mich. Ct. App. 2003) (citations and internal quotations omitted). Barnick contends that because he was an agent of PT and NHC at the relevant time, Western must also allege that he acted solely for his own interest. (*See* Mot. to Dismiss, ECF #8 at Pg. ID 46, citing *Reed v. Michigan Metro Girl Scout Council*, 506 N.W.2d 231, 233 (Mich. App. 1993).) Western appears to deny that it is required to plead that Barnick acted solely for his own interest. At this stage in the proceedings, the Court does not need to resolve (and does not decide whether) Western is required to plead and prove that Barnick acted solely for his own interest. Assuming that Western is required to allege that Barnick acted solely for his self-interest, as described above, it has fulfilled that requirement.

] he had a relationship." (*Id.* at ¶35, Pg. ID 27.)   Western's other allegations support an inference that Barnick undertook this course of conduct solely to benefit himself. Indeed, Western alleges that it provided excellent service to PT and NHC and that it was responsible for much of the success of those companies. (*See id.* at ¶¶ 13, 15, Pg. ID 23.)   Given that PT and NHC benefited from their ties to Western, it would be reasonable to conclude that Barnick acted for his own personal interest, not the interests of PT and NHC, when he tried to separate PT and NHC from Western. Thus, Western plausibly alleges that Barnick interfered with Western's relationships solely to expand his role in PT and NHC and to enrich himself.

Barnick next argues that Western "has not sufficiently pled that but for [Barnick's] interference, Nature's Health and PT would not have ended their relationships with [Western]." (Mot. to Dismiss, ECF #8 at Pg. ID 47.)   The Court disagrees.   Western alleges that PT ended its relationship with Western "based upon Barnick's statements" (Am. Compl. at ¶31, ECF #4 at Pg. ID 26) and that NHC similarly ended its relationship with Western "based, in whole or in part, upon Barnick's statements." (*Id.* at ¶34, Pg. ID 26.)   Western has thus plausibly alleged that Barnick caused PT and NHC to terminate their respective relationships with Western.

### III

### A

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent,

or scandalous matter." Fed. R. Civ. P. 12(f). "Courts disfavor motions to strike because they propose a drastic remedy. However, a court has liberal discretion to strike such filings as it deems appropriate under Rule 12(f)." *Johnson v. Cty. of Macomb*, 2008 WL 2064968, at *1 (E.D. Mich. May 13, 2008) (citations, internal quotations, and alterations omitted). "'Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.'" *Llewellyn-Jones v. Metro Prop. Grp.*, LLC, 22 F. Supp. 3d 760, 776 (E.D. Mich. 2014) (quoting *Barnes v. Convention & Show Servs., Inc.*, 12013 WL 2467920, at *1 (E.D. Mich. June 7, 2013)). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question.'" *Id.* (quoting *Barnes*, 2013 WL 2467920, at *1)).

**B**

Barnick first asks the Court to strike the allegations in paragraphs 5, 19, and 20 of the Amended Complaint that Barnick made disparaging and personal remarks to Young about certain executives at PT and NHC. In these allegations, Western claims that Barnick called PT's Chief Executive Officer an "incompetent, crooked, religious fanatic" (Am. Compl. at ¶¶ 5, 19, ECF #4 at Pg. ID 20-22, 24) and described NHC's President as "totally clueless about his own business" and "a crazy recreational bigfoot hunter." (*Id.* at ¶¶ 5, 20, Pg. ID 20-22, 24.) The Court will strike these allegations because Barnick's allegedly disparaging statements about the leaders of PT and NHC have nothing to do with this action. *See Llewellyn-Jones*, 22 F. Supp. 3d at 776 (striking allegations of alleged money laundering because they had "no relationship to the

[plaintiffs'] allegations of fraud" or to the plaintiffs' RICO claims); *see also Johnson*, 2008 WL 2064968, at ** 1-2 (striking allegations from complaint that defendant was related to a person with ties to organized crime because the allegations had no relationship to the plaintiffs' civil rights and religious freedom claims). The gist of Western's claim here is that Barnick disparaged Western *to PT and NHC*. Whether Barnick allegedly badmouthed PT and NHC to Western has no bearing on the claim. The Court agrees with Barnick that Western's allegations about his criticisms of the leaders of PT and NHC seem intended to undermine Barnick's relationship with those companies rather than to advance Western's position in this litigation.

Barnick also asks the Court to strike the allegations in paragraphs 36 and 37 of the Amended Complaint that, after Western filed suit against PT and NHC in state court, Barnick "steered" both PT and NHC to his personal attorney and that the attorney then filed counterclaims based upon false information provided by Barnick. (*Id.* at ¶¶ 36-37, Pg. ID 27-28.) The Court concludes that these allegations are relevant in part. The allegations must be read in light of the allegation in paragraph 5 of the Amended Complaint that Barnick provided false information to be included in the counterclaims as part of his effort to interfere with Western's efforts to collect amounts owing under its contracts with PT and NHC. In this context, Barnick's providing of false information to support the counterclaims, as alleged in paragraphs 36 and 37 of the Amended Complaint, is potentially relevant to Western's theory and claim here.

But the identity of Barnick's lawyer (and the lawyer for PT and NHC) is not relevant. Western claims that Barnick provided the false information for the counterclaims and does not allege that the attorney knowingly relied upon false information or did anything other than properly represent his clients. The Court sees no legitimate basis to permit Western to cast potential aspersions on the attorney or his law firm. Accordingly, the Court will strike from the Amended Complaint the references to the attorney and his firm.

## IV

For the reasons stated above, **IT IS HEREBY ORDERED** that Barnick's motion (ECF #8) is **DENIED** to the extent it seeks dismissal for failure to state a claim and **GRANTED IN PART AND DENIED IN PART** to the extent it seeks to strike certain allegations from the Amended Complaint.

**IT IS FURTHER ORDERED** that the following allegations in the Amended Complaint are **STRICKEN**:

1. The allegations in paragraph 5 that "While Barnick repeatedly mocked the leadership of both companies behind their backs (telling Western that PT's Chief Executive Officer, David Sutton was an incompetent, crooked, religious fanatic and telling Western that NHC's President, Phillip Maddox, was a nice guy but totally clueless about his own business and was a crazy, recreational bigfoot hunter);"

2. The allegations in paragraph 19;

3. The allegations in paragraph 20;

4. The references in paragraph 36 to Attorney Dan Quick and Dickinson Wright; and

5. The references in paragraph 37 to Attorney Dan Quick and Dickinson Wright.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: June 6, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 6, 2018, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764